IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| PHILIP A. GIUFFRE, | ) |
|     Plaintiff, | ) |
|     v. | ) 14 C 3692 |
| | ) Judge John Z. Lee |
| P.O. KAREN JEFFERSON #6856, | ) |
| P.O. AMY HURLEY #19490, | ) |
| P.O. MICHAEL SHEPHARD #9736, | ) |
| P.O. MARLENE SMOLEK #5499, | ) |
| P.O. MALCOLM DOMIO #7900, | ) |
| P.O. MAUREEN WEBB #12525, and | ) |
| the CITY OF CHICAGO, | ) |
|     Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff Philip Giuffre, a firefighter employed by the City of Chicago, has sued City of Chicago police officers Karen Jefferson, Amy Hurley, Michael Shephard, Marlene Smolek, Malcolm Domio, and Maureen Webb (together, "the Officer Defendants") pursuant to 42 U.S.C. § 1983. Plaintiff alleges that, on July 11, 2013, the Officer Defendants pulled into a parking lot where he was sitting, ordered him to exit his car, and shot him multiple times. Based on these allegations, Plaintiff brings a Fourth Amendment claim for use of excessive force, as well as a state law battery claim. The City of Chicago is a party to the suit as a nominal defendant, because it has agreed to indemnify the Officer Defendants for any compensatory damages awarded.

Shortly before trial, Defendants filed a motion *in limine* [172] seeking to bar Plaintiff from claiming compensatory damages based on the medical bills arising from his injuries. For the reasons stated herein, the motion is denied.

## Legal Standard

"Although the Federal Rules of Evidence do not explicitly authorize *in limine* rulings, the practice has developed pursuant to the district court's inherent authority to manage the course of trials." *Luce v. United States*, 469 U.S. 38, 41 n.4 (1984). Rulings *in limine* avoid delay and allow the parties the opportunity to prepare themselves and witnesses for the introduction or exclusion of the applicable evidence. *See Wilson v. Williams*, 182 F.3d 562, 566 (7th Cir. 1999); *United States v. Connelly*, 874 F.2d 412, 416 (7th Cir. 1989). District courts have broad discretion in ruling on evidentiary issues before trial. *See United States v. Chambers*, 642 F.3d 588, 594 (7th Cir. 2011); *Cefalu v. Vill. of Elk Grove*, 211 F.3d 416, 426 (7th Cir. 2000). Moreover, rulings on motions *in limine* are "subject to change when the case unfolds." *Luce*, 469 U.S. at 41; *accord Farfaras v. Citizens Bank & Trust of Chi.*, 433 F.3d 558, 565 (7th Cir. 2006).

## Analysis

Defendants have moved to bar any testimony, evidence, or claims regarding compensation of Plaintiff's medical bills arising from the events on July 11, 2013. In the alternative, Defendants request that they be permitted to introduce evidence that the City of Chicago has already paid, and will continue to pay, Plaintiff's medical bills. In support, they assert that Plaintiff, as an employee of the City of Chicago, participates in the City of Chicago's self-funded employee health insurance plan. Under that plan, they argue, the City of Chicago has already paid around $524,000 of Plaintiff's medical expenses. *See* Defs.' Mot. Limine No. 12 at 2, ECF

No. 172; *see also id.*, Ex. A (itemizing benefits paid through the City of Chicago's employee health plan on behalf of Plaintiff). Because the City of Chicago has also agreed to indemnify the Officer Defendants for any compensatory damages awarded at trial, Defendants contend that allowing Plaintiff to recover damages based on his medical bills will permit a double recovery, because it will effectively require the City of Chicago to pay for Plaintiff's medical bills twice—once under its self-funded employee health plan, and once more under its indemnification arrangement with the Officer Defendants.

In his response brief, as during the pretrial conference and at a motion hearing held on April 12, 2017, Plaintiff counters that Defendants have offered insufficient proof that the City of Chicago, rather than Blue Cross Blue Shield of Illinois (BCBS), paid for Plaintiff's medical expenses.[1] In addition, Plaintiff argues that the collateral source rule should bar evidence that the City of Chicago has already paid for Plaintiff's medical expenses by way of its employee health plan.

Under the collateral source rule, the amount of damages a plaintiff may be awarded is not decreased by the amount of payments he receives from an independent, collateral source in connection with his injury. *See, e.g.*, *E.E.O.C. v. O'Grady*, 857 F.2d 383, 389–90 (7th Cir. 1988); *Stragapede v. City of Evanston*, 125 F. Supp. 3d 818, 826 (N.D. Ill. 2015). "The idea behind the [collateral source rule], which originated in tort law, is that damages measured by the injury are essential

---

[1] Defendants assert that BCBS is merely a third-party administrator that the City of Chicago has hired to process claims under its employee health plan. Reply at 2, ECF No. 177; *see also id.*, Ex. A (affidavit of Carol Hamburger, Managing Deputy Comptroller of the City of Chicago's Department of Finance).

3

to deterrence." *U.S. Can Co. v. N.L.R.B.*, 254 F.3d 626, 631 (7th Cir. 2001). "The collateral source rule thus focuses on what the tortfeasor and collateral source should pay, not on what the plaintiff should receive." *O'Grady*, 857 F.2d at 390; *accord Stragapede*, 125 F. Supp. 3d at 826. "The collateral source rule applies to § 1983 actions." *Perry v. Larson*, 794 F.2d 279, 286 (7th Cir. 1986).[2]

Of particular importance to this case, the identity of the person or entity who makes a collateral payment to the plaintiff is not dispositive of whether the collateral source rule applies. Instead, "'[a]pplication of the collateral source rule depends less upon the source of funds than upon the character of the benefits received.'" *Molzof v. United States*, 6 F.3d 461, 465 (7th Cir. 1993) (quoting *Haughton v. Blackships, Inc.*, 462 F.2d 788, 790 (5th Cir. 1972)). "[I]n order to determine whether the collateral source rule is applicable, courts have looked to the nature of the payment and the reason the payment is being made rather than simply looking at whether the defendant is paying twice." *Id.* As a result, a source

---

[2] In general, "[f]ederal common law principles of tort and damages govern recovery under [§] 1983." *Watts v. Laurent*, 774 F.2d 168, 179 (7th Cir. 1985). The Seventh Circuit has therefore applied the federal common law collateral source rule in § 1983 cases. *See Perry*, 794 F.2d at 286. The parties, however, have cited both federal and Illinois case law in their filings, and they have not addressed whether the federal or state rule should apply where, as here, a plaintiff invokes federal supplemental jurisdiction to bring both a § 1983 claim and a state law tort claim. In any event, the Illinois collateral source rule does not appear to conflict with its federal counterpart, and neither party has argued otherwise. *Compare id.*, *with City of Chi. v. Human Rights Comm'n*, 637 N.E.2d 589, 592 (Ill. App. Ct. 1994) ("Under the collateral source rule, the amount of damages a plaintiff is entitled to in a civil action will not be decreased by the amount of benefits the plaintiff received from a source wholly independent and collateral to the wrongdoer."). The Court therefore need not engage in a choice-of-law analysis. *See Houben v. Telular Corp.*, 309 F.3d 1028, 1030 (7th Cir. 2002).

of funds "'may be determined to be collateral or independent, even though the [tortfeasor] supplies such funds.'" *Id.* (quoting *Haughton*, 462 F.2d at 790).

Even assuming as true Defendants' assertion that the City of Chicago, rather than BCBS, paid for Plaintiff's medical expenses, the nature of the payments and the reason why the payments were made call for application of the collateral source rule. First, the City of Chicago paid for Plaintiff's medical expenses as part of its self-funded health insurance plan, in which Plaintiff participates as a municipal employee. The Seventh Circuit has suggested that employment benefits, including benefits received through participation in an employer's health plan, are collateral benefits that should not be offset from a damages award against the employer. *See U.S. Can*, 254 F.3d at 634 ("[H]ealth insurance is treated as a collateral source even when the [defendant-employer] provides insurance as a fringe benefit."); *see also O'Grady*, 857 F.2d at 391 (analogizing pension benefits to employer-provided insurance benefits in holding that pension benefits should not be deducted from back-pay award because "pension benefits may be viewed as *earned* by the claimants"). Here, payments made to Plaintiff through his employer's health plan are best characterized as an employment benefit, rather than as a form of compensation for wrongful conduct committed by the Officer Defendants or other City of Chicago employees. Thus, to allow Defendants to deduct those payments from Plaintiff's damages award would be to "permit the [City of Chicago] to appropriate a portion of [Plaintiff's] own economic-benefits package," a result that the collateral source rule is designed to avoid. *U.S. Can*, 254 F.3d at 634.

5

Furthermore, barring Plaintiff from claiming compensatory damages based on his medical expenses would undermine one of the primary objectives that damages awards are meant to serve: deterrence of wrongdoing. *See id.* at 631–35. Because Plaintiff participates in the City of Chicago's employee health plan, the City of Chicago would have paid for Plaintiff's medical expenses *regardless* of whether Plaintiff was injured wrongfully. Allowing Defendants to reduce compensatory damages by the amount of these health insurance payments would therefore give Defendants a windfall and marginally reduce the deterrent effect of the damages award. *See McKenna v. City of Memphis*, 544 F. Supp. 415, 420 (W.D. Tenn. 1982) (refusing to deduct medical expenses from compensatory damages in § 1983 case where plaintiff and defendant were employed by the same municipality, because the municipality paid its employees' medical expenses "without regard to negligence or liability of others, including fellow employees"), *aff'd*, 785 F.2d 560 (6th Cir. 1986); *see also Stragapede*, 125 F. Supp. 3d at 826–29 (refusing to deduct Social Security disability insurance payments from plaintiffs' back-pay award under collateral source rule, in part because the insurance payments "would be made regardless of whether the [defendant] acted wrongfully").

What is more, if the City of Chicago had not agreed to indemnify the Officer Defendants, there would be no question that Plaintiff could seek compensatory damages against them based on his medical expenses. *See Perry*, 794 F.2d at 286 (applying collateral source rule in § 1983 case); *Hare v. Zitek*, No. 02 C 3973, 2006 WL 2088427, at *2 (N.D. Ill. July 24, 2006) (same); *see also O'Grady*, 857 F.2d at

389–90. The fact that the City of Chicago has agreed for its own reasons to indemnify the Officer Defendants should not impact the amount of compensatory damages that Plaintiff may seek against them in order to deter any future wrongdoing.[3] Put another way, to serve the deterrence objective that underlies the collateral source rule, Plaintiff should be permitted to seek the same measure of compensatory damages against the Officer Defendants as he would be able to seek in the absence of their indemnification arrangement with the City of Chicago.

In nevertheless arguing that Plaintiff should be barred from seeking damages based on the cost of his medical care, Defendants cite *U.S. Can Co. v. N.L.R.B.*, 254 F.3d 626 (7th Cir. 2001), for the proposition that "the collateral source rule would not apply to exclude evidence of severance pay in a calculation of back pay damages because the employer had already made the employee whole for the missing wages." Defs.' Mot. Limine No. 12 at 2–3. Defendants' reading of *U.S. Can*, however, overlooks several key points from the decision. In *U.S. Can*, the court discussed a hypothetical in which an employer promised to pay its employee six months' wages as a lump-sum severance payment upon the employee's discharge. 254 F.3d at 632. In the hypothetical, the employer discharged the employee and paid the lump sum

---

[3] Indeed, Defendants implicitly acknowledged the indemnification arrangement's irrelevance to the appropriate amount of damages in a prior motion *in limine* asking the Court to bar evidence regarding indemnification by the City of Chicago. Defs.' Mot. Limine No. 5 at 1, ECF No. 123. In support of the motion, Defendants argued: "[W]hether or not the City of Chicago indemnifies the Defendant Officers is completely irrelevant to the issue of whether [any] of the Defendant Officers is liable. . . . Knowledge that the City of Chicago will indemnify the Defendant Officers . . . can also lead jurors to inflate an award out of sympathy or other irrelevant factors." *Id.* at 1–2. The Court agreed with Defendants' argument and accordingly granted their motion to bar evidence regarding indemnification. Order of 3/17/17, at 3, ECF No. 167 (citing *Lawson v. Trowbridge*, 153 F.3d 368, 379–80 (7th Cir. 1998)).

7

as promised. *Id.* Six months later, however, the National Labor Relations Board determined that the discharge was unlawful and ordered the employee to be immediately reinstated. *Id.* Once the employee was reinstated, the employer restored its promise to pay six months' wages as severance pay upon the employee's future, lawful discharge. *Id.* The Seventh Circuit explained that, in such a scenario, the employee would not be entitled to back pay for the six months of his unemployment, because the employer already paid wages for those six months and, importantly, also restored its promise to make a future severance payment. *Id.*

The severance-payment hypothetical in *U.S. Can* is distinguishable from the facts of the present case. Allowing an employer to offset a severance payment from a back-pay award—unlike allowing an employer to offset health insurance payments from a damages award—does not allow the employer to "appropriate a portion of the employee's own economic-benefits package," as long as the employer restores its promise to make another severance payment upon future discharge. *Id.* at 632, 634. Indeed, the *U.S. Can* court expressly distinguished severance payments from employer-provided health insurance benefits on this basis. *Id.* at 634. The court also emphasized that the outcome of its severance-payment hypothetical would be different (that is, the collateral source rule would apply) if, upon the employee's reinstatement, the employer failed to restore its promise to make a future severance payment. *Id.* In this alternative version of the hypothetical, allowing the employer to deduct the severance payment from back pay would allow the severance payment to "vanish into the employer's pocket," thus

conferring a windfall on the employer and reducing the deterrent effect of the back-pay award. *Id.* Likewise, permitting the City of Chicago to deduct Plaintiffs' health insurance payments from compensatory damages would allow the insurance benefits "to vanish into the [City of Chicago's] pocket," impairing the deterrent effect that compensatory damages awards are meant to have. *Id.* For these reasons, *U.S. Can*'s discussion of the collateral source rule undermines, rather than supports, Defendants' position.[4]

Finally, the Court acknowledges Defendants' point that applying the collateral source rule in this case will have the effect of overcompensating Plaintiff for his medical expenses (assuming, of course, that a jury finds the Officer Defendants liable and awards compensatory damages against them). But overcompensation has long been recognized and accepted as a consequence of the collateral source rule. As noted above, the rule "focuses on what the tortfeasor and collateral source should pay, not on what the plaintiff should receive." *O'Grady*, 857 F.2d at 390. "Indeed, [the rule's] most obvious effect is that, in the interest of other social policies, it allows plaintiffs to be made *more than whole* for wrongs committed against them." *Id.* (emphasis added). Moreover, "in a general discussion of the

---

[4] Defendants also rely upon *Smith v. Altman*, No. 12-cv-4546 (N.D. Ill. Sept. 24, 2014). In *Smith*, the plaintiff and defendant were both employees of the City of Chicago; thus, as in this case, the City of Chicago had paid for some of the plaintiff's medical expenses and had also agreed to indemnify the defendant for compensatory damages. *See id.* at *2–3. In its pretrial order, the court permitted the defendant to introduce evidence that the City of Chicago had paid for plaintiff's medical expenses, finding that the collateral source rule did not apply and citing the severance-payment hypothetical from *U.S. Can* in support. *Id.* For the same reasons that the Court is unpersuaded by Defendants' reliance on *U.S. Can*, the Court is also unpersuaded by their reliance on *Smith*.

9

application of the collateral source rule to employment benefits, the Seventh Circuit has stated that if a court is faced with a choice between conferring a windfall on the wrongdoer and conferring a windfall on the victim, the victim is the logical choice." *Hillmann v. City of Chi.*, 66 F. Supp. 3d 1109, 1120 (N.D. Ill. 2014) (internal quotation marks omitted); *accord O'Grady*, 857 F.2d at 391. As such, the fact that applying the collateral source rule will potentially give Plaintiff a double recovery for his medical expenses is not a basis for barring Plaintiff from claiming compensatory damages in the amount of those expenses at trial.

## Conclusion

For the reasons stated herein, Defendants' motion *in limine* to bar any testimony, evidence, or claims for compensation of medical bills [172] is denied. Plaintiff shall not be barred from introducing testimony, evidence, or claims regarding compensation of his medical bills arising from the events on July 11, 2013. In addition, Defendants shall not be permitted to introduce evidence that the City of Chicago has already paid, or will continue to pay, Plaintiff's medical bills.

**IT IS SO ORDERED.**　　　　　　　　**ENTERED  4/17/17**

_____
**John Z. Lee
United States District Judge**

10